THOMAS C. MALONE *v.* HIS CREDITORS.

Under Article 2156, § 2, of the Civil Code, both the loan and the receipt must be established by notarial act, in order to create in favor of the lender the subrogation granted by that article.

APPEAL from the Fourth District Court of New Orleans, *Reynolds*, J. *Jacob Barker*, *Price & Denegre*, *L. F. Ardrey*, *Larue & Whitaker*, *Cotton & Dorsey*, *John Henderson, jr.*, *P. O'Neal*, *T. W. Collens* and *F. H. Clack*, for appellees.

VOORHIES, J. *Thomas H. Barker* is appellant from a judgment dismissing his opposition to the homologation of the tableau of distribution presented by the Syndic in this case. He claims to be a mortgage creditor for the sum of $1000, with interest thereon at the rate of eight per cent. per annum, from the 13th of December, 1853, until paid.

The origin of his claim is as follows: On the 10th of December, 1850, *Thos. C. Malone*, the insolvent, executed a mortgage in favor of *Lewis F. Generes* on a certain lot of ground and improvements, situated in the city of New Orleans, to secure the payment of three promissory notes, for the sum of $1000 each,

drawn to his own order and endorsed by himself, dated on the day of the execution of the mortgage, and payable twelve months after date. The act contains various stipulations, among others the *pact de non alienando*, that the holders of the notes should have the right to effect insurance on the property in case the mortgagor neglected to do so, etc. The prolongation of the term of one of the notes, the one which forms the basis of the appellant's demand, appears to have been granted until the 13th December, 1852.

Shortly after the execution of this mortgage, *Thomas C. Malone* conveyed this, and other property, to his wife, *Mary Houghran*, as a *dation en paiement* of her dotal and extra-dotal rights, on her assuming the payment of the mortgage notes. On the 9th of March, 1852, she sold the mortgaged property to *Robert Allen*, who also assumed the payment of said notes, executing besides, as part of the price, his three promissory notes, each for the sum of $1775, drawn to his own order, and by him endorsed, and payable in one, two and three years respectively from date. *Jacob Barker*, as transferree of the notes, having obtained an order of seizure and sale against *Robert Allen*, the Syndic of the creditors of the insolvent sued out an injunction arresting the sale, on the ground that the conveyance from the insolvent to his wife was simulated and fraudulent, and consequently vested no legal title to the property in any person claiming under her.

It appears to be conceded that this property, on the proceeds of which the appellant asserts his privilege, was sold as part of the assets of the insolvent. On the 13th December, 1852, *Thomas C. Malone* executed a receipt in presence of a notary and two witnesses, whereby he acknowledged the payment made on that day by *Jacob Barker* of the *Generes'* notes, amounting to $3000. On the same day he executed a notarial act, subrogating *Barker* to all the rights of the State Bank of Louisiana, as holder of said notes. After declaring that said notes were due on that day, and that *Robert Allen*, who had assumed their payment, was absent from the city, without having provided the means for that purpose, and that the maker was unable himself to pay them, the act recites:

"Now, therefore, the said *Jacob Barker* hereby lends the said *Thomas Conolly Malone* for the period of twelve months from the date hereof, the sum of three thousand dollars for the purpose of paying said notes, which sum was paid in the presence of the said *Malone*, and at his request, and also in presence of the undersigned notary, and of *Hugh Madden* and *William V. Phelps*, witnesses, to the said State Bank of Louisiana, in payment of said three notes, of one thousand dollars each, which said notes were then taken up and delivered to the said *Jacob Barker*."

The note in question is identified with this act by the usual words "*ne varietur*," written by the notary across its face, and bears only the blank endorsements of the maker and *Bmy. Bacas;* and the only evidence which shows the payment to the bank, as holder thereof, is the recital contained in this act.

The Civil Code, Article 2156, §2, provides: "To make this subrogation valid, it is necessary that the act of borrowing, and the receipt, be executed in presence of a notary and two witnesses; that in the act of borrowing, it be declared that the sum was borrowed to make the payment, and that in the receipt it be declared that the payment has been made with the monies furnished for that purpose by the new creditor," etc.

Under this Article, it is urged by the appellant, that both the act of borrowing with subrogation and the receipt—l'acte d'emprunt et la quittance—should be exe-

MALONE
v.
HIS CREDITORS.

cuted by the debtor. Such is not the interpretation given to this article in the case of *Wilcox* v. *His Creditors*, 11 R. R., 346, in which Judge Martin said:

"*Hester Matilda Thompson's* claim is on a subrogation of a judgment obtained by *Bundy* against *Wilcox*, as a lender of the amount of that judgment to *Wilcox* for the payment thereof. The loan is established by notarial act. So ought to have been the receipts by *Bundy*. If this had been done, the subrogation would have been perfect. The payment to the creditor is proven by parol," etc. In this case, the recital in the act of borrowing appears to be the only proof of payment to the bank. It is clear, in regard to parties and privies to the act, it would be binding, but we do not understand the rule to go any farther. 1 Greenleaf on Evidence, §23 *et seq.* No inference of the alleged payment can be drawn from the note itself.

The last position assumed by the appellant's counsel appears to us to be equally untenable under the evidence.

*John Corbett* is also appellant from the same judgment. His claim is evidenced by a judgment in his favor against *Martin Costello* and *Thomas C. Malone, in solido,* for the sum of $2200 with costs, based on a contract of lease.

In his answer to the opposition of *Corbett,* the Syndic objected that this judgment was a mere nullity, inasmuch as it was for the rent of the premises which were occupied by *Corbett* since its rendition, and that it was moreover in fraud of the rights of the creditors of the insolvent. The record exhibits no evidence in support of this allegation. The Judge *a quo* ordered the claim to be classed on the tableau, deducting therefrom: "$240 allowed to *M. Costello,* subrogated to the rights of *S. Hubbell.*" This deduction, of which the appellant complains, appears to us to be unexplained either by the evidence or the judgment itself. We think the Judge *a quo* therefore erred in not allowing the whole amount claimed by the appellant, including the costs awarded to him in that suit.

It is, therefore, ordered and decreed, that the judgment of the court below, in regard to the claim of *Thomas H. Barker,* be affirmed, with costs, and in regard to that of *John Corbett,* it be amended by allowing the whole amount claimed by him, including the costs decreed in his favor in said suit, against *M. Costello* and the insolvent; and so amended, that the same be affirmed, the costs of appeal to be borne by the insolvent's estate.

NOTE.—MERRICK, C. J., not having been present at the argument, took no part in this opinion.